838 F.2d 465
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Larry W. BRYANT, Plaintiff-Appellant,
v
Caspar W. WEINBERGER; John O. Marsh, Jr.; Edward C.
Aldridge, Jr., Defendant- Appellee.
 No. 87-3584.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 3, 9187.
Decided: Jan. 20, 1988.
 
 James Harold Heller (Michael J. Kator; Kator, Scott & Heller, on brief), for appellant.
 Steve A. Matthews, Deputy Assistant Attorney General (Richard K. Willard, Assistant Attorney General henry E. Hudson, United States Attorney; Leonard S. Schaitman, Civil Division, Department of Justice, on brief), for appellees.
 Before MURNAGHAN and ERVIN, Circuit Judges, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Larry W. Bryant is a GS-11 civilian employee editor of the Army News Service. He brought a two count suit against the Secretaries of Defense, the Army and the Air Force. Count I charged that the defendants violated Bryant's first and fifth amendment rights by interfering with his attempts to place advertisements concerning unidentified flying objects (UFOs) and government coverups of UFO incidents in civilian enterprise newspapers. Civilian enterprise newspapers are commercial newspapers published under contract with armed services components to serve specific defense installations. Their operations are governed by Department of Defense instructions that forbid advertising that implies invidious discrimination or may present a danger to loyalty, discipline or morale. Defendants apparently acted pursuant to that authority and directed civilian enterprise newspapers serving various Army and Air Force components and installations not to carry Bryant's paid advertisements seeking information on UFOs.
 
 
 2
 Count I was settled by consent judgment. Under it, Bryant will resubmit his advertisements, defendants will inform the newspapers that the advertisements do not violate regulations, and defendants will reimburse Bryant for legal expenses. The consent judgment was entered without prejudice to Count II of Bryant's complaint and was not an admission of wrongdoing on the part of either party.
 
 
 3
 Count II alleged that Bryant had been harassed by his supervisors in retaliation for exercise of his first amendment rights. Bryant averred that his work performance evaluation was changed from "exceptional" to "unsatisfactory," that he was subjected to the supervision of an employee junior to him, and that his job standards were changed to deprive him of independence and responsibility that he formerly exercised to the satisfaction of his supervisors.
 
 
 4
 Defendants moved for dismissal of Count II or, in the alternative, for summary judgment under Fed.R.Civ.P. 56(c). The district judge granted the motion by Order dated March 16, 1987, without a written opinion. The Order indicated that it was entered for reasons given from the bench. The transcript of the hearing on the motion indicates that the district court granted the motion to dismiss because it was, under Pinar v. Dole, 747 F.2d 899 (4th Cir.1984), cert. denied, 471 U.S. 1016 (1985), without jurisdiction.
 
 
 5
 We conclude that the district court was correct in the conclusion that it lacked jurisdiction to hear Bryant's claims arising out of his employment relation with the federal government. Pinar v. Dole controls. It holds that federal employees aggrieved by personnel actions are limited to the remedies provided by the Civil Service Reform Act (CSRA).
 
 
 6
 The Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95-454, 92 Stat. 1111 (1978), provides, with exceptions not generally relevant, four tiers of punitive personnel actions and four corresponding sets of remedies for federal employees aggrieved by a personnel action. The remedies provided by statute essentially provide minimal procedural protections that an agency must employ in its internal agency grievance procedure. Agencies can, and do, provide procedural protections in excess of the statutory minima.
 
 
 7
 Following passage of the CSRA, courts confronted the question of whether the statutory remedies are adequate to challenge personnel actions undertaken in retaliation for exercise of constitutionally protected rights. The Supreme Court, in Bush v. Lucas, 462 U.S. 367 (1983), considered the relief available to a NASA engineer who alleged that his proposed firing was in retaliation for statements he made that were highly critical of the agency. The proposed personnel action, removal, was an "adverse action," 5 U.S.C. Sec. 7512 (1980), so Bush was deemed entitled to the top tier of procedures in challenging the action, including judicial review in the Federal Circuit. 5 U.S.C. Secs. 7513, 7702, 7703 (1980 & Supp.1987).
 
 
 8
 While Bush's administrative proceedings were pending, he sought alternative or additional relief by bringing suit to recover damages for defamation. He included a Bivens-type[1] cause of action for violation of his constitutional rights. The Court declined to create a Bivens action by federal employees for alleged violation of first amendment rights where CSRA applies. It noted:
 
 
 9
 The federal courts' statutory jurisdiction to decide federal questions confers adequate power to award damages to the victim of a constitutional violation. When Congress provides an alternative remedy, it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the courts' power should not be exercised. In the absence of such a congressional directive, the federal courts must make the kind of remedial determination that is appropriate for a common law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.
 
 
 10
 Bush, 462 U.S. at 378.
 
 
 11
 The Court in Bush reviewed factors counselling hesitation in matters of federal personnel policy and declined " 'to create a new substantive legal liability without legislative aid and as at the common law,' because we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it." Id. at 390 (citation omitted).
 
 
 12
 The Fourth Circuit considered punitive personnel actions allegedly taken in retaliation for exercise of first amendment rights in Pinar v. Dole. Pinar, a Washington National Airport guard, alleged that two personnel actions--a proposed seven day suspension (reduced at agency proceedings to a letter of reprimand) for making false statements about his supervisor, and a proposed fourteen day suspension (reduced at agency proceedings to two days) for failing properly to secure a firearm, were taken in retaliation for exercise of his first amendment rights. Pinar alleged that, since neither action was an "adverse action," his statutory remedies were less than those afforded Bush. He argued in particular that, inasmuch as Pinar had no right to judicial review, Bush should not control. The court rejected the distinction. It concluded that the comprehensive remedies of the CSRA, as to Pinar's requests both for damages and for injunctive relief, were exclusive. Pinar, 747 F.2d at 909-10.
 
 
 13
 The case at bar involves federal personnel actions less serious than those involved in Bush and Pinar. Bryant alleges that a lower performance evaluation, changes in supervision over him and changes in job responsibilities were steps taken in retaliation for his exercise of first amendment rights. Bryant's remedies under the CSRA are limited to the internal agency grievance procedure and requesting the Office of Special Counsel of the Merit Systems Protection Board to investigate whether a prohibited personnel practice has occurred. 5 U.S.C. Secs. 1206, 2302(a)(2)(A) (1977 & Supp.1987).
 
 
 14
 Bryant argues that Pinar was accorded greater remedies so Pinar should not control. But, Pinar futilely raised precisely the same argument in an attempt to distinguish Bush. The argument meets the same fate here. Pinar held that the CSRA remedies are exclusive. The court buttressed its statutory interpretation by noting that if direct review in district court were extended to an employee like Pinar subjected to a minor disciplinary action while one who is fired (e.g., Bush) is allowed only limited appellate review in the Federal Circuit, it would fly in the face of Congress' clear intent to distinguish between disciplinarya ctions according to the severity of the punishment imposed and provide for varying degrees of review based on the deprivation in question. The reasoning in Pinar applies a fortiori to Bryant's case.
 
 
 15
 Pinar holds that recourse to CSRA procedures is Bryant's exclusive remedy in challenging punitive personnel actions on the basis that they were undertaken in retaliation for his exercise of his first amendment rights. Bryant is not without recourse in vindicating his first amendment rights. He can, and did, sue to enforce them. His suit was favorably resolved for him with the consent judgment rendered as to count I. But, to challenge personnel actions, Bryant's remedies are limited to those provided in the CSRA.
 
 
 16
 While the record herein may be a bit thin, we nevertheless cannot say that the Special Counsel's investigation and conclusions in this case were clearly deficient. We caution, however, that the Special Counsel's investigation and conclusions in this case were clearly deficient. We caution, however, that the Special Counsel's duties must be performed thoroughly and fairly. See Spagnola v. Mathis, 809 F.2d 16, 23 (D.C.Cir.1986).
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)